IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SVYATOSLAV HRYTSYAK, | CASE NO. 1:21-CV-824-JRK |
| Petitioner, | JUDGE JAMES R. KNEPP II |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| STATE OF OHIO, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On April 19, 2021, Petitioner Svyatoslav Hrytsyak, a prisoner in state custody, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). On July 27, 2021, Respondent Warden Tim McConahay, in his official capacity as Warden of the Mansfield Correctional Institution (hereinafter, the State), filed a Return of Writ that included the state court record. (ECF #8). Mr. Hrytsyak filed a Traverse to Return of Writ on August 26, 2021. (ECF #10).

The District Court has jurisdiction over the petition under § 2254(a). On April 22, 2021, this matter was referred to me pursuant to Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry of Apr. 22, 2021). As explained below, I recommend the District Court **DISMISS** Grounds Two and Four as procedurally defaulted, **DENY** Ground One as barred from review, and **DENY** Ground Three as meritless. I further recommend the District Court **DENY** Mr. Hrytsyak a certificate of appealability as to all grounds.

1

PROCEDURAL HISTORY

**A.    Factual findings of the Court of Appeals**

The Ohio Court of Appeals, Eighth Appellate District, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Mr. Hrytsyak rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Eighth District determined:

{¶ 2} This appeal arose from a traffic stop on June 13, 2018, in Independence, Ohio. Independence Police Officer Shane Bates initiated a traffic stop of appellant's vehicle after observing multiple traffic infractions.

{¶ 3} Upon approaching appellant's vehicle, Officer Bates detected a "faint" odor of alcohol emanating from inside. The odor became stronger when appellant spoke to Officer Bates. In addition to the odor of alcohol, Officer Bates observed that appellant had bloodshot eyes, and was slurring his words. When Officer Bates approached the vehicle, appellant attempted to press the auto lock button on the car door, but he missed the button.

{¶ 4} Appellant was unable to produce a driver's license upon request, and Officer Bates learned that appellant was driving under suspension. When Officer Bates asked appellant if he had been drinking, appellant indicated that he consumed "a couple of beers earlier in the evening."

{¶ 5} Based on his observations of appellant — the odor of alcohol emanating from the vehicle that intensified when appellant spoke, appellant's bloodshot eyes, and his slurred speech — Officer Bates administered field sobriety tests. Officer Bates administered (1) the Horizontal Gaze Nystagmus test ("HGN test"), (2) the Walk and Turn test ("WAT test"), and (3) the One Leg Stand test ("OLS test"). Appellant performed poorly on the field sobriety tests. During the HGN test, appellant had trouble tracking the light with his eyes. On the WAT and OLS tests, appellant swayed and had trouble maintaining his balance. Appellant's performance on the field sobriety tests was also captured by Officer Bates's dash-camera video.

{¶ 6} Based on his observations of appellant and appellant's performance on the field sobriety tests, Officer Bates placed appellant under arrest for OVI on June 13, 2018. On June 16, 2018, the Cuyahoga County Grand Jury returned a two-count indictment charging appellant with: Count 1 — OVI, a third-degree felony in violation of R.C. 4511.19(A)(2)(a), with a furthermore clause alleging that appellant had a prior OVI conviction on or around August 2016, in Cuyahoga C.P. No. CR-

16-603930, that was a felony, and a prior felony OVI specification, pursuant to R.C. 2941.1413(A); and Count 2 — OVI, a third-degree felony in violation of R.C. 4511.19(A)(1)(a), with a furthermore clause alleging that appellant had a prior OVI conviction on or around June 2015, in Cuyahoga C.P. No. CR-14-592194, which was a felony, and a prior felony OVI specification, pursuant to R.C. 2941.1413(A).

{¶ 7} Appellant retained counsel and was arraigned on July 3, 2018. He pled not guilty to the indictment.

{¶ 8} The matter was stayed by the Ohio Supreme Court on September 10, 2018, based on an affidavit to disqualify the trial judge to whom the case had been assigned. The stay was lifted on September 27, 2018.

{¶ 9} At some point, appellant dismissed the attorney he originally retained to represent him. Appellant retained a second attorney to represent him, and the new attorney filed a notice of appearance on October 10, 2018. This second attorney filed a motion to withdraw as counsel on November 28, 2018.

{¶ 10} A hearing was held on November 28, 2018. The state placed the terms of a plea agreement on the record. Appellant rejected the state's proposal. The trial court denied appellant's pro se motion to dismiss filed on November 21, 2018, on the basis that the pro se motion was filed while appellant was represented by counsel. The trial court granted counsel's motion to withdraw, and the court appointed a third attorney to represent appellant.

{¶ 11} On February 27, 2019, appellant filed a motion to suppress. Therein, appellant argued that the traffic stop was illegal because officers lacked probable cause or reasonable suspicion to stop his vehicle, and as a result, all evidence related to and derived from the traffic stop should be suppressed.

{¶ 12} The state filed a brief in opposition on March 12, 2019. Therein, the state argued that (1) the traffic stop was constitutionally valid because it was initiated after Officer Bates observed appellant commit multiple traffic violations, (2) Officer Bates had a reasonable articulable suspicion that appellant was intoxicated, warranting the prolonging of the stop and conducting field sobriety testing, and (3) the field sobriety tests were properly administered and performed in substantial compliance with the National Highway Traffic Safety Administration ("NHTSA") standards.

{¶ 13} On March 25, 2019, the trial court held a hearing on appellant's motion to suppress. English is not appellant's first language. In order to accommodate appellant, the trial court arranged to have an interpreter present for the suppression hearing and trial. Officer Bates testified during the suppression phase of the hearing. At the close of the suppression phase of the hearing, the trial court denied appellant's motion to suppress.

{¶ 14} The matter proceeded to trial on the same day. Appellant elected to try the prior felony OVI specifications to the bench. The state presented the testimony of Officer Bates. At the close of the state's case, defense counsel moved for a Crim.R. 29 motion for a judgment of acquittal. The trial court denied defense counsel's motion. Defense counsel presented the testimony of appellant. The defense rested and renewed the Crim.R. 29 motion that was again denied.

{¶ 15} At the close of trial, the jury found appellant guilty on both counts. The trial court found appellant guilty on the underlying specifications. The trial court ordered a presentence investigation report and set the matter for sentencing.

{¶ 16} The trial court held a sentencing hearing on April 15, 2019. The parties agreed that the DUI counts merged for sentencing purposes. The state elected to sentence appellant on Count 1. The trial court imposed a prison sentence of three and one-half years: a mandatory two-year sentence for the prior felony OVI offense specification, to be served prior to and consecutively with a sentence of one and one-half years on the OVI offense. The trial court issued a nunc pro tunc sentencing entry on April 19, 2019.

(ECF #9-1 at PageID 225-29; *see also State v. Hrytsyak*, No. 108506, 2020 WL 1228611 (Ohio Ct. App. March 12, 2020), *appeal not allowed*, 159 N.E.3d 1160 (Ohio 2020) (table)).

**B.    State court conviction and sentence**

On June 19, 2018, a Cuyahoga County Grand Jury indicted Mr. Hrytsyak on two counts of driving while under the influence, in violation of Ohio Revised Code § 4511.19(A), each with a prior felony OVI specification. (ECF #8-1 at PageID 134-35). He was arraigned on July 3, 2018 and, through retained counsel, pled not guilty. (*Id.* at PageID 136).

On September 11, 2018, the Supreme Court of Ohio stayed the case while it considered Mr. Hrytsyak's Affidavit of Disqualification of the trial judge. (*Id.* at PageID 136-41). On September 27, 2018, after the Supreme Court of Ohio declined to disqualify the judge, the trial court set the matter for a pretrial. (*Id.* at PageID 142-45). Mr. Hrytsyak returned to court with new retained counsel. (*Id.* at PageID 146).

4

On November 21, 2018, Mr. Hrytsyak *pro se* moved to dismiss the case. (*Id.* at PageID 148). On November 28, 2018, the court struck the motion from the record because Mr. Hrytsyak filed it while he was represented by counsel, granted retained counsel's motion to withdraw from the case, and appointed new counsel. (*Id.* at PageID 152-53).

On February 27, 2019, Mr. Hrytsyak, through counsel, moved to suppress evidence derived from an allegedly illegal traffic stop. (*Id.* at PageID 154-61). On March 25, 2019, after a hearing, the trial court denied Mr. Hrytsyak's motion to suppress. (*Id.* at PageID 180). Trial began immediately after the court denied Mr. Hrytsyak's request that the judge recuse herself and accepted his waiver of jury trial on the prior OVI felony specifications. (*Id.* at PageID 181). The jury found Mr. Hrytsyak guilty of both counts of driving while under the influence and the court found him guilty of both prior felony OVI specifications. (*Id.* at PageID 184). The parties agreed the counts merged and the State elected to proceed to sentencing under Count 1. (*Id.*). The court sentenced Mr. Hrytsyak to 18 months on Count 1 and a mandatory term of 2 years on the prior felony OVI specification, to be served consecutively to the sentence imposed on Count 1. (*Id.*). In addition, the court imposed up to 3 years of post-release control. (*Id.*).

## C.     Direct appeal

On May 1, 2019, through new appellate counsel, Mr. Hrytsyak appealed to the Eighth District. (ECF #8-1 at PageID 186-87). There, he raised the following assignments of error:

> **First Assignment of Error**: The trial court erred in denying appellant's motion to suppress.

> **Second Assignment of Error**: The guilty verdict cannot be upheld because evidence and testimony presented at trial did not establish appellant's guilt beyond a reasonable doubt.

**Third Assignment of Error**: The trial court abused its discretion in refusing to allow appellant to represent himself.

**Fourth Assignment of Error**: The trial court erred in issuing a blanket sentence upon appellant.

(*Id.* at PageID 194-204).

On March 12, 2020, the Eighth District affirmed the trial court's judgment. (*Id.* at PageID 224-60). On May 18, 2020, Mr. Hrytsyak appealed to the Supreme Court of Ohio. (*Id.* at PageID 261). The court  dismissed his appeal on August 24, 2020 for want of prosecution, but later accepted his motion for delayed appeal and set a briefing schedule. (*Id.* at PageID 322, 368). In his memorandum in support of jurisdiction, Mr. Hrytsyak asserted the following:

**First Proposition of Law**: Court erred in ruling that traffic stop was constitutionally valid, and finding Officer Bates credible, after multiple errors and perjuries of his.

**Second Proposition of Law**: The guilty verdict cannot be upheld because evidence and perjured testimony presented at trial did not match and did not establish my guilt beyond a reasonable doubt. Biased judge violated 28 U.S.C. 455(a) and presented specification charges to the jury after I elected to try prior OVI specification to the bench, by waiving the jury.

**Third Proposition of Law**: The trial court abused its discretion in refusing to allow me to fire my ineffective counsel and represent myself, in violation of the Sixth Amendment.

(*Id.* at PageID 371) (cleaned up). On December 29, 2020, the Supreme Court of Ohio declined jurisdiction and later denied Mr. Hrytsyak's motion for reconsideration. (*Id.* at PageID 390-93).

## FEDERAL HABEAS CORPUS

**Grounds for Relief.** Mr. Hrytsyak's petition asserts four grounds for relief with supporting facts as follows:

**Ground One**:  The trial court erred in denying my motion to suppress since traffic stop was unconstitutional in violation of the 4th Amendment.

6

**Supporting Facts**: Trial judge found that testimony of O. Bates was more credible than dashcam footage, police report, and google map, even after O. Bates changed his story during suppression hearing. No violations were committed by me, during oral arguments, the state was unable to identify a specific ordinance or statute governing lane changes that I violated. More in attached memorandum.

**Ground Two:** Trial judge erred in denying motion for her recusal, in violation of 28 U.S.C. 455(a).

**Supporting Facts**: Trial judge had a long-term conflict with my used to be attorney James Jenkins, because he filed two complaints to the Supreme Court of Ohio against my judge, one in 2013-14, the second in 2018. Judge harbored a bias against him, and fair judgment was impossible. Even after he was forced to withdraw from my case. Judge shall recuse herself from any proceeding in which her impartiality might reasonably be questioned. During trial, judge proved her bias against me. Please see my memorandum for proof of it.

**Ground Three**: The trial court abused its discretion in refusing to allow me to fire my ineffective counsel and represent myself in violation of the 6th Amendment.

**Supporting Facts**: My attorney refused to subpoena my witnesses and question the credibility of O. Bates. His performance between suppression hearing and trial was completely different. At trial, he acted as assistance of prosecutor, not as my attorney. I was ready to defend myself same day, no delay needed. I did explain it to the judge. More in attached memorandum.

**Ground Four**: The guilty verdict cannot be upheld because conviction was obtained by presented tampered evidence, perjured testimony, and by presenting specifications to the jury after I elected to try the prior OVI specification to the bench by waiving the jury.

**Supporting Facts**: I was indicted based on falsified police and OID reports. Part of favorable to me video footage was cut off, sound replaced with music. Testimony of O. Bates was different between March 25 and March 26. This information was withheld from the jury, and before trial I properly waived jury on the specification charges, prosecutor did not object, judge granted. But after trial, without my consent, specification was presented to the jury in violation of Federal Rule of Criminal Procedure 23(a). More in attached memorandum.

(ECF #1 at PageID 5-11) (cleaned up). He requests this Court vacate his convictions. (*Id.* at PageID 14).

7

**Mootness.** After Mr. Hrytsyak filed his petition, he completed serving his sentence and was released from custody. (ECF #13). He does not appear to be under Post-Release Control or any form of supervision. *See generally* Ohio Department of Rehabilitation and Correction, Offender Search, http://appgateway.drc.ohio.gov/OffenderSearch (last accessed Feb. 7, 2024) (no record returning when searching Mr. Hrytsyak's name).[1] Because Mr. Hrytsyak was in custody when he filed the petition, he satisfies the "in custody" requirement. *See Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). But courts lack jurisdiction to consider any case or issue that has "lost its character as a present, living controversy," and thereby becomes moot. *Hall v. Beales*, 396 U.S. 45, 48 (1969). The question becomes whether Mr. Hrytsyak's subsequent release from custody and the expiration of his sentence moots this case.

A prisoner's "challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "But once a prisoner's sentence has expired, some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Id.* A habeas petitioner challenging a conviction is not mooted by the petitioner's release from prison prior to the court's determination because the petitioner could still face "significant collateral consequences flow[ing] from a criminal conviction." *Gentry v. Deuth*, 456 F.3d 687, 694 (6th Cir.

---

[1]     The Offender Search webpage states it "displays data on those offenders who are currently incarcerated in an Ohio prison, currently under Department supervision, or judicially released." *Id.* The lack of any record under Mr. Hrytsyak's name suggests he is neither incarcerated nor under any form of supervision.

2006). Collateral consequences of a conviction are presumed. *Id.* On the other hand, a habeas petition challenging only a sentence is mooted by the petitioner's release from prison unless a petitioner can show sufficient "collateral effects." *Lane v. Williams,* 455 U.S. 624 (1982). Collateral consequences are not presumed when a petitioner challenges only an expired sentence. *Id.* This is so because "[n]ullification of a conviction may have important benefits for a defendant . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter." *North Carolina v. Rice,* 404 U.S. 244, 248 (1971). In this case, Mr. Hrytsyak challenges his *convictions* and not the sentence imposed; I therefore presume collateral consequences exist. I further note that neither in its Return of Writ nor in any supplemental filing did the State argue this case was moot. Accordingly, I conclude the case is not moot.

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Hrytsyak's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied

10

clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Id.* at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a

11

state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where

12

petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed more fully below), rather than exhaustion, applies. *Id.*

**Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Williams*, 460 F.3d at 806. First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims barring federal court review. *Williams,* 460 F.3d at 806; *Shinn v. Ramirez,* 142 S. Ct. 1718 (2022) ("When [a state prisoner] has failed to [first present that claim to the state court in accordance with state procedures], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does

14

not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Furthermore, futility cannot constitute cause for the procedural default of a claim for failure to raise a claim on direct review if it means simply that a claim was "unacceptable to that particular court at that particular time." *Engle v. Isaac*, 456 U.S. 107, 130, n.35 (1982).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a

constitutional violation has probably resulted in the conviction of one who is actually innocent."
*Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence
means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623
(1998). A valid actual innocence claim must be supported by new reliable evidence, such as
exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that
was not presented at trial that is so strong a court cannot have confidence in the outcome of the
petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more
likely than not that no reasonable juror would have convicted him in light of the new evidence."
*Id.* at 327.

DISCUSSION AND ANALYSIS

The State argues Grounds Two and Four are procedurally defaulted because Mr. Hrytsyak
did not fairly present them to the Ohio courts. (ECF #8 at PageID 111). The State also argues
Ground One is a Fourth Amendment challenge that is not cognizable on federal habeas review
because Mr. Hrytsyak received a full and fair opportunity to litigate the claim and Ground Three is
meritless. (*Id.* at PageID 118, 122). For the following reasons, I agree with the State.

**A.      Grounds Two and Four are procedurally defaulted.**

In Ground Two, Mr. Hrytsyak alleges the trial judge was biased against him and his
attorney and erred in not recusing herself from the case. (ECF #1-1 at PageID 24). In Ground
Four, he claims the conviction was obtained by presenting tampered evidence and perjured
testimony, and by presenting specifications to the jury after he elected to try the prior OVI
specification to the bench. (*Id.* at PageID 27). Mr. Hrytsyak did not assets the claims in Grounds

16

Two and Four during his direct appeal to the Eighth District but did raise them in his appeal to the Supreme Court of Ohio. (ECF #8-1 at PageID 371).

Under the *Maupin* analysis, Mr. Hrytsyak has procedurally defaulted Grounds Two and Four. The "Supreme Court of Ohio has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals." *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985) (citing *State v. Phillips*, 272 N.E.2d 347 (Ohio 1971)). Because Mr. Hrytsyak did not raise these claims before the Eighth District, the first prong of the *Maupin* analysis is satisfied. The second prong is also satisfied because although the Supreme Court of Ohio did not explain the reason for dismissing the appeal, it is presumed that the court intended to enforce its own procedural bar and dismissed the claims because Mr. Hrytsyak failed to raise them in the state court of appeals. *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996) (where there were no state court decisions rejecting the petitioner's due process claim, the reviewing court could assume that, if the state court had addressed petitioner's due process claim, it would not have ignored its own procedural rules and would have enforced the procedural bar). The third prong is satisfied because the rule is an adequate and independent ground on which the state can foreclose review of a federal constitutional claim. *See Hersi v. Maquis*, No. 1:18-cv-2437, 2020 WL 3420810, at *10 (N.D. Ohio May 26, 2020), *report and recommendation adopted*, 2020 WL 3412523 (N.D. Ohio June 22, 2020) (citing *Phillips*, 272 N.E.2d at 352) ("It is an established rule of long standing in this state that a constitutional question . . . cannot be raised in the Supreme Court unless it was presented and urged in the courts below.").

Unless Mr. Hrytsyak can show cause to excuse the procedural default and resulting prejudice, Grounds Two and Four are procedurally defaulted. For cause as to both grounds, Mr.

Hrytsyak claims his appellate attorney failed to raise the claims despite his explicit direction to do so. (ECF #10 at PageID 912-13, 918). Ineffective assistance of counsel can constitute cause for a procedural default but a claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Under Ohio law, claims of ineffective assistance of appellate counsel must be raised in a motion for reopening before the court of appeals pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure. Mr. Hrytsyak did not file a Rule 26(B) motion or otherwise raise an independent claim of ineffective assistance of appellate counsel in the state courts and pursue that claim to the Supreme Court of Ohio; therefore, his counsel's failure to bring the judicial bias claim on direct appeal cannot serve as cause to excuse his procedural default.

Finally, Mr. Hrytsyak has not supported a fundamental miscarriage of justice claim with new reliable evidence that was not presented at trial that is so strong the court cannot have confidence in the outcome of the trial. *See Schlup*, 513 U.S. at 324. Therefore, Grounds Two and Four remain procedurally defaulted.

I therefore recommend the District Court **DISMISS** Grounds Two and Four as procedurally defaulted.

## B.    Ground One is not cognizable on federal habeas review.

In Ground One, Mr. Hrytsyak argues the trial court erred in denying his motion to suppress because the traffic stop was unconstitutional, violating his Fourth Amendment right. (ECF #1 at PageID 5). But since 1976, the Supreme Court has held that federal habeas corpus review of a petitioner's Fourth Amendment claim is generally prohibited when the petitioner

received "the opportunity for full and fair consideration" of that claim in state court. *Stone v. Powell*, 428 U.S. 465, 481-82 (1976). This is because the key purpose of federal habeas corpus is to free innocent prisoners, and whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty. *Id.* at 490. Further, exclusion is not a personal right guaranteed by the Constitution, but a deterrent prescribed by the courts. *Id.* at 485; *Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013).

The "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, "not an inquiry into the adequacy of the procedure actually used to resolve the particular claim." *Good*, 729 F.3d at 639. Accordingly, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claims." *Id.*

When considering whether a petitioner may raise a Fourth Amendment claim on federal habeas review, a court must first determine whether the state procedural mechanism presents the opportunity to raise a Fourth Amendment claim. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). Then, the court must determine whether the petitioner's presentation of that claim was frustrated because of a failure of that mechanism. *Id.*

The Sixth Circuit has held that Ohio, by providing for the filing of a pretrial motion to suppress and the opportunity to take a direct appeal from any ruling denying a motion to suppress, has a state procedural mechanism in place that presents the opportunity for full and fair litigation of a Fourth Amendment claim. *Id.* As to the second inquiry, Mr. Hrytsyak presented his motion to suppress in the trial court and the court denied it after hearing testimony and taking evidence. Mr.

Hrytsyak then presented the claim to the state appellate court, which rejected the claim after thorough review. *See Hrytsyak,* 2020 WL 1228611, at *3-11. This suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell. See Good,* 729 F.3d at 640; *see also Loza v. Mitchell*, 705 F. Supp. 2d 773, 860 (S.D. Ohio Mar. 31, 2010) (holding that defendant received a full and fair opportunity to litigate his Fourth Amendment claim where the trial court heard and denied his motion to suppress and the defendant subsequently raised the same Fourth Amendment claim on direct appeal); *Johnson v. Eppinger*, No. 1:19 CV 984, 2020 WL 8771326, at *14 (N.D. Ohio June 1, 2020), *report and recommendation adopted*, 2021 WL 861509 (N.D. Ohio Mar. 8, 2021) (same); *Long v. Watson*, No. 3:22-cv-503, 2022 WL 15522935, at *1 (N.D. Ohio Oct. 27, 2022) (same).

Mr. Hrytsyak pursued his Fourth Amendment claim from the trial court to the Supreme Court of Ohio, and thus received the opportunity for full and fair consideration of his claim. Therefore, I recommend the District Court **DENY** Ground One because the claim is barred from review.

### C.    Ground Three is meritless.

In Ground Three, Mr. Hrytsyak argues the trial court erred when it refused to allow him to fire his counsel and represent himself. (ECF #1 at PageID 8).

The Sixth Amendment provides that a criminal defendant shall have the right to assistance of counsel for his defense. U.S. Const. Amend. VI. In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court recognized a corollary constitutional right "to proceed without counsel when [a defendant] voluntarily and intelligently elects to do so." *Id.* at 807. But "the right to self-representation is not absolute." *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 161 (2000). A

20

defendant may forfeit his right to self-representation if he does not assert it "in a timely manner." *Id.* at 162. The timeliness requirement reflects that "[e]ven at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id.*; *see also Hill v. Curtin*, 792 F.3d 670, 677-79 (6th Cir. 2015) (state court decision denying self-representation request made on first day of trial as untimely without performing a *Faretta* inquiry was not an unreasonable application of federal law).

The Eighth District addressed Mr. Hrytsyak's self-representation claim on direct appeal:

{¶ 102} In his third assignment of error, appellant argues that his Sixth Amendment right to counsel was violated when the trial court denied his mid-trial request to fire assigned counsel and proceed pro se.

> After a trial has commenced, the decision about whether to grant a defendant's request to represent himself is within the discretion of the trial court. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. However, "[w]hen the defendant properly invokes the constitutional right, a trial court's denial of the right to self-representation is per se, reversible error."

> A criminal defendant's right to self-representation is rooted in the Sixth Amendment to the United States Constitution, which provides: "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defense." The Ohio Constitution provides that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." However, the right of self-representation is not absolute. "To be properly invoked, a pro se request must be unequivocal and timely; otherwise, the trial court may, in its discretion, deny the request." Thus, "[a] trial court may deny a defendant's request for self-representation if it is untimely made."

{¶ 103} In *Lavette*, the defendant-appellant verbally requested to represent himself in the middle of trial. The defendant did previously raise a concern about defense counsel's performance; however, he never requested to proceed pro se. On appeal, this court held that the trial court did not abuse its discretion in denying defendant's request to represent himself because it was not raised in a timely manner. The Ohio Supreme Court has held that the request of a defendant to represent himself three days before trial was scheduled to commence was untimely.

{¶ 104} In the instant matter, like *Lavette*, appellant's request to discharge appointed counsel and proceed pro se was made in the middle of trial, after the state rested, and before appellant intended to testify on his own behalf. Unlike *Lavette*, appellant had not previously raised a concern about counsel's performance.

{¶ 105} The attorney appellant sought to discharge had been representing appellant since November 2018. Counsel filed the motion to suppress on appellant's behalf, and advocated on appellant's behalf during the suppression hearing. Counsel represented appellant during the majority of the jury trial that commenced on March 25, 2019.

{¶ 106} The record reflects that the trial court inquired about appellant's concerns with defense counsel's performance. Appellant indicated that he wanted to represent himself because defense counsel failed to subpoena the two attorneys that previously represented him in the matter. Appellant alleged that these two attorneys would have proved his innocence and demonstrated that Officer Bates's testimony regarding the dash-camera video was not truthful. Appellant also asserted that his attorney was "playing a role of second prosecutor right now."

{¶ 107} Accordingly, the record reflects that the trial court made a sufficient inquiry into appellant's request to waive counsel and represent himself. The trial court concluded, however, that appellant's request was untimely, and that his argument that the police purportedly withheld the dash-camera footage from defense counsel was misplaced. Defense counsel confirmed that he received the video from the police on January 24, 2019. The prosecutor also confirmed that defense counsel received the video that appellant alleged had been withheld more than two months before trial.

{¶ 108} For all of these reasons, we find no basis upon which to conclude that the trial court's decision to deny appellant's request to represent himself was unreasonable, arbitrary, or unconscionable. Appellant's third assignment of error is overruled.

*Hrytsyak*, 2020 WL 1228611, at *15-16.

The analysis was not "contrary to, or . . . an unreasonable application of clearly established Federal law" or "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). As the Eighth District recognized, Mr. Hrytsyak asked to represent himself mid-trial. Review of the trial transcript confirms Mr. Hrytsyak made the request just before he was to take the stand to testify. (ECF #9-2 at PageID 748-

22

49). Mr. Hyrtsyak has not rebutted the presumption of correctness applied to the state court's determination of any factual issues by clear and convincing evidence. *See* 28 U.S.C. § 2554(e)(1). Therefore, the Eighth District's determination that the request for self-representation was untimely is a reasonable application of *Faretta* and *Martinez*. As such, I recommend the District Court **DENY** Ground Three as meritless.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether (i) the petition states a valid claim of the denial of a constitutional right and (ii) the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Hrytsyak has made no substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are valid claims of the

denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court not grant Mr. Hrytsyak a COA as to any ground.

### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend the District Court **DISMISS** Grounds Two and Four as procedurally defaulted, **DENY** Ground One as barred from review, and **DENY** Ground Three as meritless. Finally, I recommend the District Court **DENY** a Certificate of Appealability.

Dated: February 7, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl,* **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.,* **932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'"** *Overholt v. Green,* **No. 1:17-CV-00186, 2018 WL 3018175, at \*2 (W.D. Ky. June 15, 2018) (quoting** *Howard,* **932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice.** *See United States v. Wandahsega,* **924 F.3d 868, 878-79 (6th Cir. 2019).**